IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES R., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | No. 23-cv-3256 |
| *Acting Commissioner of Social Security*, | : : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**CRAIG M. STRAW**  **December 17, 2024**
**United States Magistrate Judge**

    Charles R. (hereafter "Plaintiff") seeks review of the Commissioner's decision denying his application for Disability Insurance Benefits ("DIB"). The parties consented to proceed before a Magistrate Judge[1] and the matter was assigned to me.[2] For the following reasons, I grant Plaintiff's request for review, vacate the Commissioner's decision, and remand the case for further proceedings consistent with this opinion.

**I.    PROCEDURAL HISTORY**

    On March 26, 2021, Plaintiff filed an application for DIB under the Social Security Act ("SSA"), alleging a disability onset date of January 31, 2019 ("AOD"). R. 176. The claim was denied initially on August 18, 2021, and again on reconsideration. R. 73-88, 91-98. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 125-26. On May 12, 2022, a hearing took place over the phone due to the Covid-19 Pandemic restrictions. R. 39. Plaintiff

---

[1] See Doc. 7; 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73.
[2] See Doc. 6.

1

appeared with his attorney, Brynn Lapszynski.  R. 37, 40.  Vocational Expert ("VE") Alina Kurtanich also testified at the hearing.  R. 37, 52-55.

The ALJ issued a decision denying benefits.  R. 10-31.  Plaintiff filed a request for review of the ALJ's decision, which was denied.  R. 1-3.  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.  20 C.F.R. § 404.981.  Plaintiff's counsel then filed this action in federal court.  Doc. 1.  Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  Doc. 9.  Defendant filed a Response to Plaintiff's Request for Review.  Doc. 10.  Plaintiff subsequently filed a Reply.  Doc. 11.

## II. **LEGAL STANDARDS**

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings," see 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform their past work; and

> 5. If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform based on the claimant's age, education, and work experience.

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the local and national economies based on their age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Zirnsak, 777 F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)). It is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudeck, 181 F.3d at 431).

### III. ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ determined that Plaintiff met the insured status requirements of the SSA through September 30, 2023. R. 15. Plaintiff had not engaged in any substantial gainful employment since the AOD. Id. The ALJ found the following severe impairments: diabetes, visual

3

impairment, chronic kidney disease, hypertension, unspecified arthropathies, obesity, depression, anxiety disorder, and posttraumatic stress disorder.  R. 16; 20 C.F.R. § 404.1520(c).  The ALJ decided that Plaintiff's impairments, either singly or in combination, did not meet or medically equal any of the Listings.[3]  R. 16; 20 C.F.R. pt. 404, subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

    Considering the entire record, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c),[4] except he can frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs but he can never climb ladders, ropes, or scaffolds.  R. 19.  Plaintiff can never work at unprotected heights, and cannot read fine print, write or work on the computer, or drive at night.  Id.  Plaintiff can perform simple, routine tasks, make simple work-related decisions, and occasionally have contact with the public, supervisors, and co-workers.  Id.  Plaintiff is restricted to "few changes in a routine work setting which is defined as occurring occasionally."  Id.  The ALJ found Plaintiff could not perform his past relevant work as a corrections officer[5] and administrative assistant.[6]  R. 29; see 20 C.F.R. § 404.1565.  The ALJ additionally found that there were other jobs in the national market that Plaintiff could

---

[3] The ALJ specifically discussed Listings 1.18 (Abnormality of a major joint(s) in any extremity), 2.02 (Loss of central visual acuity), 6.05 (Chronic kidney disease with impairment of kidney function), 9.00 et seq. (Endocrine disorders), 12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety and stressor related disorders), and 12.15 (Trauma and stressor related disorders).  See R. 16-17.

[4] Medium work is defined as, "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[5] Corrections officer is a semi-skilled, medium exertion level position.  See Dictionary of Occupational Titles (DOT) (4th ed. rev. 1991), 372.667-010; R. 29, 53.  Plaintiff, however, testified that he performed this work at a light exertion level.  R. 29, 44, 53.

[6] Administrative assistant is a skilled, sedentary exertion level position.  See DOT, 169.167-010; R. 29, 53.

4

perform including laundry worker,[7] hospital cleaner,[8] and food service worker.[9]  R. 30. Therefore, the ALJ found that Plaintiff was not disabled.  R. 58.

In his request for review, Plaintiff argues the ALJ failed to appropriately evaluate the medical opinions of Dr. James Goodyear, resulting in an RFC that is not supported by substantial evidence and contrary to the record evidence.  Doc. 9, at 2-7.  Next, Plaintiff argues that the ALJ's RFC is deficient because the ALJ found Plaintiff had moderate limitations in concentration, persistence, and pace, but did not include the limitation in Plaintiff's RFC.  Id. at 7-9.  The Commissioner counters that the ALJ properly evaluated Dr. Goodyear's opinion and provided adequate reasoning for finding the opinion "somewhat persuasive."  Doc. 10, at 4-10.  The Commissioner also argues that the ALJ provided a valid explanation why Plaintiff could perform simple tasks which was supported by substantial evidence.  Id. at 11-12.

## IV.    FACTUAL BACKGROUND

Plaintiff was a "person of advanced age" at his AOD.  R. 29, 43, 176; 20 C.F.R. § 404.1563(d).  Plaintiff has his GED and some specialized job training.  R. 29, 216.

### A.    Medical evidence[10]

#### 1.    Dr. James Goodyear

Plaintiff was first referred to Dr. Goodyear for an internal medicine examination which occurred on July 6, 2020.[11]  R. 325-42.  Upon examination, Dr. Goodyear noted Plaintiff's

---

[7] See DOT, 361.684-014.
[8] See DOT, 323.687-010.
[9] See DOT, 319.677-014.
[10] Here, I outline only the relevant medical opinions related to the issues on appeal.
[11] This referral corresponds with Plaintiff's first application for DIB alleging the same impairments and similar AOD as the current application.  R. 57.  Plaintiff's first application was

complaints of lower back pain that radiated to his upper legs. R. 330. He also assessed Plaintiff's range of motion. R. 331-34. Dr. Goodyear noted Plaintiff demonstrated knee flexion-extension of 130/150 degrees bilaterally. R. 331. Plaintiff's hip forward flexion was 90/100 degrees bilaterally, and hip abduction was 30/40 degrees bilaterally. R. 332. Plaintiff demonstrated lumbar region flexion-distention of 45/90 degrees, and lateral flexion of 15/90 degrees bilaterally. Id. All other movements were within normal limits. R. 331-34.

After the examination, Dr. Goodyear completed a Medical Source Statement of Ability to do Work-Related Activities ("MSS") (Physical) detailing Plaintiff's physical limitations. R. 335-40. Dr. Goodyear found that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry 11 to 20 pounds, and never lift/carry 21 to 100 pounds. R. 335. Dr. Goodyear cited Plaintiff's lower back pain and decreased range of motion to support his findings. R. 335. Plaintiff could sit for 4 hours, stand for 2 hours, and walk for an hour without interruption. R. 336. In an 8-hour workday, Plaintiff could sit for 8 hours, stand for 4 hours, and walk for 2 hours. Id. Plaintiff did not require an assistive device for ambulation. R. 336. Plaintiff could bilaterally reach (overhead), reach (generally), and push/pull frequently, and handle, finger, and feel continuously. R. 337. Dr. Goodyear noted that Plaintiff could only occasionally operate foot controls bilaterally due to his lower back pain and decreased range of motion. Id. Regarding postural activities, Plaintiff could occasionally climb stairs/rams, stoop, and kneel. R. 338. Plaintiff could frequently balance, but never climb ladders/scaffolds, crouch, or crawl. Id. Dr. Goodyear cited Plaintiff's vision impairment as support for his postural

---

denied at the initial level, which Plaintiff did not appeal. R. 57-71. At Plaintiff's hearing, counsel requested that Plaintiff's first claim be considered by the ALJ. R. 55. Therefore, the ALJ considered both examinations by Dr. Goodyear contained in the record. R. 10-36.

limitations finding.  Id.  Dr. Goodyear also noted that Plaintiff's visual impairment affected his ability to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, or approaching people/vehicles.  Id.  Plaintiff was unable to read very small print, ordinary newspaper or book print, but was able to view a computer screen and determine the differences in shape and color of small objects like screws, nuts, and bolts.  Id.  Plaintiff had the following environmental limitations: no exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes or pulmonary irritants, or extreme cold, occasional exposure to extreme heat, and frequent exposure to vibrations.  R. 339.  Plaintiff could be exposed to loud noise (heavy traffic).  Id.  Dr. Goodyear cited to Plaintiff's decrease in vision, diabetes, and high blood pressure to support his findings.  Id.  Lastly, Dr. Goodyear found Plaintiff could perform most activities like shopping, traveling unassisted, ambulating without assistance, walking a block, using public transportation, climbing a few steps, and caring for himself, but could not sort, handle, or use paper/files.  R. 340.

    Plaintiff was referred to Dr. Goodyear for a second internal medicine examination which occurred on July 20, 2021.  R. 469-90.  Upon re-examination, Dr. Goodyear noted Plaintiff's complaints of hip pain in addition to his lower back pain.  R. 470.  Dr. Goodyear noted, however, that Plaintiff's left hip x-ray demonstrated no acute bony abnormality, and Plaintiff had a negative right hand radiographic examination.  R. 474.  He also re-assessed Plaintiff's range of motion.  R. 483-86.  Dr. Goodyear noted Plaintiff's hip forward flexion was 90/100 degrees on the right and 80/100 degrees on the left, interior hip rotation was 40/40 on the right and 35/40 on the left, while external hip rotation was 50/50 on the right and 40/50 on the left.  R. 484.  Plaintiff's backward hip extension was 25/30 on the right and 20/30 on the left, abduction was

35/40 on the right and 30/40 on the left.  Id.   Plaintiff demonstrated lumbar region flexion extension of 80/90 degrees.  Id.  All other movements where within normal limits.  R. 483-86.

Dr. Goodyear completed another MSS (physical) based on this examination.  R. 476-81.  The limitations assessed by Dr. Goodyear in his 2021 MSS were the same as his 2020 MSS with the following exceptions.  R. 335-340, 476-481.  Plaintiff's ability to walk for one hour uninterrupted was decreased to thirty minutes.  R. 336, 477.  Dr. Goodyear cited Plaintiff's bilateral hip pain and lower back pain to support this change.  R. 477.  Plaintiff could no longer handle, finger, and feel continuously, and was limited to frequent handling, fingering, and feeling.  R. 337, 478.  Dr. Goodyear cited bilateral hand pain to support this new finding.  R. 478.  Plaintiff's ability to use foot controls decreased from continuous use to frequent use due to his lower back pain and left hip pain.  R. 337, 478.  Plaintiff could now read small print, newspaper, and book print.  R. 338, 479.  Plaintiff's environmental limitations changed from no exposure to moving mechanical parts to frequent exposure, never to occasional motor vehicle operation, and no exposure to dust and pulmonary irritants to frequent exposure.  R. 339, 480.  Dr. Goodyear cited to Plaintiff's vision impairments, bilateral hand pain, diabetes, and high blood pressure to support the changes in environmental limitations.  Id.

**C. Non-Medical Evidence**

At his hearing, Plaintiff verified that he previously worked as a corrections officer.  R. 44.  Although the job became physical at times, he did not often have to lift more than 50 pounds.  Id.  His last job involved administrative assistant duties.  R. 44-45.  He would assemble applications for review during the hiring process.  Id.  At times, he would manage office supplies and put away office supply shipments which involved lifting.  Id.  Regarding Plaintiff's vision,

8

Plaintiff underwent cataract removal surgery. R. 45-46. After his surgery, his vision improved greatly but he still wears glasses. Id. Plaintiff has a hard time reading small print. R. 46. He suffers from diabetes, which is managed with insulin, although he cannot always afford his insulin. Id. Plaintiff has high blood pressure that he manages with medication. R. 47-48. Plaintiff explained that his doctor had to increase his blood pressure medication dosage after unsuccessful medication management. Id. He experiences adverse side effects from his high blood pressure medication including stomach issues and frequent bathroom trips. R. 48. Plaintiff also manages his depression with medication, but he still experiences some symptoms of depression and anxiety. R. 49.

Plaintiff performs all of his daily living activities on his own and can prepare simple meals such as grilled cheese sandwiches. Id. Plaintiff testified that he has difficulty using the stove or microwave. R. 50. Plaintiff leaves the house to attend doctors' appointments and church. Id. He, however, needs assistance going out. Id. Due to his vision impairment, Plaintiff gave up his car and requires other people to drive him places. Id. He still has a difficult time driving at night if he does drive. Id. Plaintiff also reported needing assistance when he goes out because his pain prohibits him from lifting items. R. 51.

V.   **DISCUSSION**

   **A. The ALJ failed to appropriately evaluate Dr. Goodyear's opinion and provide adequate reasons for rejecting his proposed environmental limitations.**

Plaintiff first claims that the ALJ failed to properly evaluate Dr. Goodyear's medical opinions resulting in an RFC that is not supported by substantial evidence and contrary to the medical record. Doc. 9, at 2. Specifically, Plaintiff claims that it is unclear what limitations the ALJ adopted and rejected and did not provide sufficient reasons to reject the limitations. Id. at 6.

9

Plaintiff states the ALJ failed to explain why Dr. Goodyear's exertional limitations were not consistent with Dr. Goodyear's record.[12]  Id.  Additionally, Plaintiff argues that the ALJ was incorrect when stating that Dr. Goodyear relied on Plaintiff's subjective complaints to support his findings.  Id.  The Commissioner argues that substantial evidence supports the ALJ's evaluation of Dr. Goodyear's opinions and Plaintiff's RFC.  Doc. 10, at 8.  I find that the ALJ's failure to address the consistency of Dr. Goodyear's opinions and explain why he rejected Dr. Goodyear's environmental limitations, which would be work preclusive, requires remand.

     An RFC assessment is the most a claimant can do in a work setting despite the limitations caused by his or her impairments.  20 C.F.R. § 404.1545(a)(1).  The RFC is based on all the relevant and other evidence in the case record.  Id. § 404.1545(a)(3).  It is the ALJ's exclusive responsibility to determine the claimant's RFC.  20 C.F.R. § 404.1546(c).  An ALJ must include in the RFC any credibly established limitations the record supports.  Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007).

     The ALJ's RFC assessment must be "'accompanied by a clear and satisfactory explication of the basis on which it rests.'"  Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).  If potentially conflicting evidence exists in the record, an ALJ must "give some indication of the evidence which he [or she] rejects and his [or her] reasons for discounting such evidence."  Burnett v. Comm'r Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see Cruz v. Comm'r of Soc. Sec., 244 Fed. App'x 475, 479 (3d Cir. 2007) (citation omitted) (stating when record contains

---

[12] It appears the Plaintiff is making a consistency argument.  Consistency, however, evaluates the consistency of the medical opinion against the other record evidence.  See 20 C.F.R. § 404.1520c(c)(2)

conflicting evidence ALJ must explain what evidence is accepted and what evidence is rejected and reasons for determination). In the absence of such evidence, the Court "'cannot tell if significant probative evidence was not credited or simply ignored.'" Burnett, 220 F.3d at 121 (quoting Cotter, 642 F.2d at 705). Furthermore, an ALJ may not reject evidence for no reason or the wrong reason. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

An "ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources.'" Thomas v. Kijakazi, No. 21-cv-3547, 2022 WL 17880922, at *6 (E.D. Pa. Dec. 22, 2022) (quoting Cheryl F. v. Kijakazi, No. 20-cv-16052, 2022 WL 17155681, at *10 (D.N.J. Nov. 22, 2022) (citing 20 C.F.R. § 404.1520c(a)). Instead, the ALJ must evaluate the persuasiveness of the opinion based on five factors set forth in 20 C.F.R. § 404.1520c(c). See Thomas, 2022 WL 17880922, at *6; see also Lawrence v. Comm'r of Soc. Sec., No. 21-cv-01239, 2022 WL 17093943, at *4 (M.D. Pa. Nov. 21, 2022) ("Rather than assigning weight to medical opinions, [an ALJ] will articulate how persuasive he or she finds the medical opinions.") (alteration in original) (citations and internal quotations omitted). The most important factors when determining the persuasiveness of a medical opinion are supportability and consistency. Id. § 404.1520c(a); Rose v. Kijakazi, No. 20-3222, 2022 WL 910093, at *5 (E.D. Pa. March 29, 2022).

Supportability means "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." Cota v. Kijakazi, No. 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022); 20 C.F.R. § 404.1520c(c)(1). As to supportability, "[t]he more relevant the objective medical evidence and

11

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which the medical source's opinion is consistent with the record as a whole." Cota, 2022 WL 3686593, at *5; 20 C.F.R. § 404.1520c(c)(2). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). A key difference between the two is that "supportability considers the evidence and explanations 'presented b[y] a medical source' whereas consistency looks at 'evidence from other medical sources and nonmedical sources in the claim . . . .'" Gongon v. Kijakazi, 22-cv-384, 2023 WL 3919467, at *13 (E.D. Pa. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

The ALJ is only required to explain the supportability and consistency factors in the written opinion. 20 C.F.R. § 404.1520c(b)(2). Even though the ALJ is not bound to accept any physicians' conclusions, the ALJ "'may not reject them unless [he] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'" Balthasar v. Kijakazi, No. 20-cv-06181, 2022 WL 2828848, at *6 (E.D. Pa. July 20, 2022) (quoting Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003) (additional quotations and citations omitted)); see also Densberger v. Saul, No. 20-cv-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) ("[P]rovided that the decision is accompanied by an adequate, articulated reason, it is the province and duty of ALJ to choose which medical opinions and evidence deserve greater weight.").

12

Here, the ALJ failed to evaluate the consistency of Dr. Goodyear's opinion and environmental limitations, which, if adopted, would have prohibited Plaintiff from performing any of the jobs the VE proposed and the ALJ adopted. Further, the ALJ failed to explain why he rejected the environmental limitations after providing that Dr. Goodyear's evaluation supported the overall limitations assessed.

The ALJ's relevant RFC determination included that Plaintiff could perform medium work except he can frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs but can never climb ladders, ropes, or scaffolds. R. 19. Plaintiff could never work at unprotected heights, and could not read fine print, write or work on the computer, or drive at night. Id.

Regarding Dr. Goodyear's opinions, the ALJ reasoned:

> In addition, the undersigned finds the assessments from internal medicine consultative examiner Dr. Goodyear . . . to be somewhat persuasive as these assessments were completed based on in person examinations of the claimant with some diagnostic imaging. In addition, the limitations assessed are largely consistent with the findings noted during the examination; however, Dr. Goodyear has understated the claimant's exertional capacity given the generally normal findings noted during the objective examination and seems to have relied more on the claimant's subjective complaints in making these assessments.

R. 28 (internal citations omitted).

The ALJ found Dr. Goodyear's opinion somewhat persuasive because Dr. Goodyear understated Plaintiff's exertional capacity. Id. The ALJ explicitly rejected Dr. Goodyear's exertional limitations, and limitations related to stooping, kneeling, crawling, crouching, and

13

climbing.[13] R. 19. The ALJ implicitly rejected Dr. Goodyear's environmental limitation that Plaintiff can never be exposed to humidity and wetness. Id. at 30-31, 339, 480.

In rejecting Dr. Goodyear's exertional limitations, the ALJ addressed the supportability of Dr. Goodyear's proposed exertional limitations. R. 28. Regarding the exertional limitations, the ALJ reasoned that Dr. Goodyear's clinical findings on examination were generally normal and it appeared that Dr. Goodyear was finding greater limitations based on Plaintiff's subjective complaints. Id. The ALJ also addressed supportability of the overall opinion by stating that the limitations Dr. Goodyear assessed were largely consistent with Dr. Goodyear's examination findings. Id.

The ALJ, however, failed to address, in any way, the consistency of Dr. Goodyear's overall opinion as required by the regulations. See 20 C.F.R. § 404.1520c(a). The ALJ does not evaluate whether Dr. Goodyear's opinions and limitations were consistent or inconsistent with other medical opinions or the record as a whole. This constitutes error. See Minarsky v. Kijakazi, No. 23-cv-1000, 2024 WL 3993220, at *11 (M.D. P.a. Aug. 29, 2024) (finding ALJ erred by failing to evaluate consistency of the evidence with other medical sources as required by regulations). Further, it is unclear from the ALJ's decision whether the opinions and proposed limitations are consistent or inconsistent with the record because the ALJ does not cite to any of

---

[13] Although the ALJ failed to provide a consistency analysis and explain why Dr. Goodyear's stooping, kneeling, crawling, crouching, and climbing limitations were rejected, the Court finds this error was harmless. Even if the ALJ adopted the stooping, kneeling, crawling, crouching, and climbing limitations, Plaintiff could still perform at least two out of three of the jobs the ALJ found complied with Plaintiff's RFC. See DOT, 319.677-014, 1991 WL 672782; DOT, 323.687-010, 1991 WL 672782; DOT, 361.684-014, 1991 WL 672983; see also 20 C.F.R. §§ 404.1520(g), 416.920(g) (stating that if claimant can perform other work, claimant is not disabled); Rutherford, 399 F.3d at 553 (holding remand not required if it would not affect the outcome of the case).

the record evidence discussed earlier in the ALJ's opinion or make a connection between the ALJ's rejected limitations and the record evidence. See Gamret v. Colvin, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citing Hodes v. Apfel, 61 F.Supp.2d 798, 806 (N.D. Ill. 1999)) (describing an ALJ's task as "build[ing] an accurate and logical bridge between the evidence and the result").

In addition to failing to perform a consistency analysis, the ALJ also failed to address the work preclusive environmental limitation set forth by Dr. Goodyear's opinions. Dr. Goodyear found that Plaintiff could never be exposed to humidity and wetness during both examinations in 2020 and 2021. R. 339, 480. Dr. Goodyear cited to Plaintiff's poor vision, diabetes, bilateral hand pain, and high blood pressure to support his environmental limitations. Id. The ALJ found that Plaintiff could perform the job requirements of a laundry worker, hospital cleaner, and food service worker. R. 30-31. Two jobs require Plaintiff to be exposed to humidity and wetness occasionally, and one requires the Plaintiff to be exposed frequently. See DOT, 319.677-014, 1991 WL 672782; DOT, 323.687-010, 1991 WL 672782; DOT, 361.684-014, 1991 WL 672983.

It appears that the ALJ rejected this limitation, however, it is unclear why. The ALJ fails to discuss this environmental limitation or provide a reason this limitation was rejected, nor does he evaluate or explain how this limitation was consistent or inconsistent with the record evidence. See 20 C.F.R. § 404.1520c(a), (c)(2); Balthasar, 2022 U.S. Dist. LEXIS 128441, at *16 (citing Cadillac, 84 F. App'x at 168) (stating ALJ must explain why certain evidence has been accepted and why other evidence has been rejected); Plummer, 186 F.3d at 429 (ALJ may not reject evidence for no reason or wrong reason). Even when considering other parts of the ALJ's decision that cite to Dr. Goodyear's evaluation, there is no indication why the

15

environmental limitation was rejected.[14]  See Harrison v. Berryhill, No. 17-cv-618, 2018 WL 2051691, at *5 (M.D. P.a. Apr. 14, 2018) (citing Rutherford, 399 F.3d at 552)(Court may not engage in post hoc analysis of medical evidence or substitute its own conclusions for those of the fact-finder)).  The rejection of Dr. Goodyear's environmental limitation, which would preclude Plaintiff from performing any of the three jobs the ALJ found Plaintiff could perform under his RFC, without a consistency analysis or reason for rejection constitutes harmful error.  See Minarsky, 2024 WL 3993220, at *11 (finding ALJ's error failing to evaluate consistency of the evidence with other medical sources was harmful because adopting additional proposed limitations may affect the outcome of the case).

Without a consistency analysis and explanation for the environmental limitation rejection this Court cannot provide a meaningful review of the decision, constituting error and warranting remand.[15]  See Mathews v. Kijakazi, No. 21-1140, 2022 WL 4535087, at n.2 (W.D. Pa. Sept. 28, 2022) (alteration in original quotation marks) (citing Jones, 364 F.3d 501, 505 (3d Cir. 2004)

---

[14] In further support of remand, the Court notes that the ALJ vaguely cited to Dr. Goodyear's evaluations on multiple occasions to support the ALJ's RFC and persuasiveness conclusions of other medical opinions.  R. 25-29.  As explained above, the ALJ, however, failed to provide a consistency analysis for Dr. Goodyear's opinions and rejected Dr. Goodyear's environmental limitation that would be work preclusive.  The ALJ's rejection of Dr. Goodyear's environmental limitation is inconsistent with the ALJ's use of his evaluations in support of other conclusions and finding that all of Dr. Goodyear's proposed limitations, except for the proposed exertional limitations, were supported by his examination.  See Balthasar v. Kijakazi, No. 20-cv-06181, 2022 WL 2828848, at *6 (E.D. Pa. July 20, 2022) (quoting Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003) (Although ALJ not bound to accept physician conclusion, must first weigh evidence against other evidence and provide some explanation why ALJ rejected evidence); see also Burnett v. Comm'r Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (requiring explanation for contradicting evidence in the record).

[15] The Court will not address Plaintiff's remaining claim of error.  See, e.g., Burns v. Colvin, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016) (adopting magistrate judge's report and recommendation declining to address claimant's additional allegations of error because remand might produce different result, rendering discussion of those claims moot).

("An ALJ's decision must reflect a thorough consideration of the evidence and permit 'meaningful review.'").

## VI. CONCLUSION

The ALJ failed to perform a consistency analysis for Dr. Goodyear's medical opinions, rejected the environmental limitation after finding it was supported by Dr. Goodyear's evaluation, and failed to explain why the work preclusive environmental limitation was rejected. Accordingly, I find that remand is warranted.

Plaintiff's request for review (Doc. 9) is **GRANTED**. The final decision of the Commissioner to deny Plaintiff benefits is **VACATED**, and the case is **REMANDED** to the Commissioner for further consideration consistent with this opinion.[16] An appropriate order follows.

BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge

---

[16] Even though the Court ultimately finds that remand is necessary, nothing in this decision suggests what the result should be on remand. That task remains the duty and province of the ALJ after consideration of this opinion.